## 10719

### STATE v. CORBITT

### (109 S. E. 133)

1. CRIMINAL LAW—DEMURRER 'TO' PLEA OF FORMER JEOPARDY ADMITS FACTS ALLEGED.—Demurrer to accused's plea of former jeopardy admits the allegations of fact contained therein.

2. CRIMINAL LAW—UPON APPEAL FROM OVERRULING OF DEMURRER, UNNECESSARY THAT TESTIMONY BE INCORPORATED IN RECORD.—Upon appeal from overruling of demurrer to plea, it is unnecessary that testimony taken upon the trial be incorporated in the record.

3. CRIMINAL LAW—DEMURRER TO PLEA OF FORMER ACQUITTAL DOES NOT ADMIT CHARACTERIZATION OF FACTS.—Where accused, having killed three persons in one affray, was separately indicted for murder for each killing, and, on trial upon one indictment, was acquitted, the allegation in his plea of former acquittal to another of the indictments "that the several shots fired by him from the said revolver at said persons at said time and place * * * were actuated and moved by the same identical impulse, and constituted one single act of volition" was a mere characterization—an inference from the alleged facts—so that demurrer to the plea did not admit that the three homicides were a single act on his part.

4. CRIMINAL LAW—PLEA OF FORMER ACQUITTAL OF MURDER NOT GOOD AS TO SEPARATE INDICTMENT FOR ANOTHER KILLING AT SAME TIME.—Where accused, having killed three persons in one affray was separately indicted for murder for each killing, and, on trial upon one indictment was acquitted, such an acquittal was not a bar to prosecution upon one of the other indictments, the accused having committed a separate act against each one killed, nor could accused's claim that his act constituted but one offense be sustained even if the three homicides were a single act on his part, as more than one offense may follow from a single act, and, in any event, Const. Art 1. § 17, prohibits double jeopardy "for the same offense," and not for the same act.

5. CRIMINAL LAW—ON OVERRULING DEMURRER TO PLEA, ACCUSED NOT NECESSARILY ENTITLED TO ORDER SUSTAINING PLEA.—It did not follow from the order overruling demurrer to plea of former acquittal that accused was entitled to an order sustaining his plea, a' demurrant being usually accorded the privilege of pleading over.

Before SHIPP, J., Orangeburg, January, 1921. Reversed.

Carlos Corbitt indicted for the murder of Bryan Salley, Julian Cooper and Hugh Fanning. After acquittal 'on the indictment for the murder of Bryan Salley, the indictment for the murder of Julian Cooper was called. The defendant interposed a plea of *autrefois acquit* or former jeopardy, to which the State demurred. From order sustaining the plea of the defendant the State appeals.

Paragraph 10 of accused's plea was as follows:

"(10) That the several shots fired by him from the said revolver at said persons at said time and place, and under the said circumstances, were actuated and moved by the same and identical impulse and constituted one single act of volition, namely, to do anything and everything against the said three men, to wit, Bryan Salley, Jule Cooper and Hugh Fanning, to protect his person and habitation against their joint and confederated aggression."

The ruling of Circuit Judge S. W. G. Shipp on motion to direct a verdict on the ground of previous acquittal in the above entitled case was as follows:

"The defendant in this case sets up the plea of former acquittal, *autrefois acquit;* he alleges substantially in his plea that he was indicted on March 27, 1920; that heretofore in September, 1920, he was arraigned and pleaded not guilty to the indictment found against him by the grand jury of Orangeburg County charging him with the murder of Bryan Salley on the 27th of March, 1920; that the jury was impaneled and that he was duly acquitted on that charge. He further states that he is now called at the bar of

the Court to answer to an indictment charging him with the murder of one Julian Cooper on the 27th of March, 1920; he alleges that he was in former jeopardy in the trial for the murder of Bryan Salley because he alleges the evidence necessary to prove the charge against him for the murder of Julian Cooper would be the same evidence as was used against him in the case charging him with the murder of Bryan Salley. He goes on in his plea to state that at his former trial it was in evidence that at his home in his front yard on the night of March 27th, 1920, he fired several shots in quick succession at three men, mentioning them, Bryan Salley, Julian Cooper and Hugh Fanning; that these three parties were making an attack upon him jointly in his own yard, and that he shot from the necessity of defending and protecting his life and home. He further alleges that the act in shooting at these three men, alleged aggressors, constituted one act and one volition; that he shot at no particular one, but was endeavoring to protect himself and his home against aggression; that he killed all three of these men at one time and that it was in pursuance of one act and one volition.

The defendant further alleges that all of these facts came out in the trial for his killing Bryan Salley, and that at that trial three issues were submitted to the jury who tried the case; that three theories were presented to the jury. The three theories that he sets up in his plea are: (1) That the defendant purposely fired at and killed Bryan Salley with malice; (2) that the defendant fired at Julian Cooper and Hugh Fanning, and missing them killed Salley; (3) that with a reckless disregard of human life the defendant fired at the three men, killing them. He says that those three issues were submitted to the jury, and that he was duly acquitted by the jury, and he alleges that the action of the jury in acquitting him is the equivalent to finding

that he was excusable in the act that he committed on that occasion. That is substantially what he alleges.

When a defendant puts in a special plea of former acquittal or former conviction, two courses are open to the State: The State may traverse the plea by denying the allegations thereof, and the question would then be one of fact to be tried by a jury, or the State may demur to the plea, and then it becomes a question of law; not a fact for the consideration of the jury, but a question of law for the Court. When the defendant demurs to a paper, that is an admission of the facts stated in the paper; it is not an admission of any legal conclusions, but it is an admission of the truth of any fact pleaded in the paper that is properly pleaded. That is held in the case of *State v. De Wees,* 76 S. C. 74, 56 S. E. 674, 11 Ann. Cas. 991.

In considering a question of former acquittal it involves a consideration of the record. Two indictments involved in the case are made a part of the plea and a part of the demurrer; that is for the consideration of the Court. The Court considers the record, the indictments, and it also considers partially in a question of fact, where there is the allegation in the plea that it is the same act, the same transaction, and the same volition; that is a question of fact. If the indictment shows that the offenses charged are so distinct and separate that, notwithstanding the demurrer on the part of the State, if the indictment shows that the charges were so separate and distinct, notwithstanding the admissions, the Court comes to the conclusion that they are separate and distinct, the Court would have to sustain the demurrer. That involves a question of fact; still, if the indictment shows on its face that it could not result from the same act, the State would lose nothing by the demurrer. If on the other hand there can be shown or if they might have been the result of the same act, that is an admission on the part of the State.

It is unfortunate that in South Carolina the Supreme Court of this State has never ruled on the precise question in this case in any similar case. The State relies on the case of the *State v. Thurston,* 2 McMull, 382, in which it was held that the indictments in the Thurston Case were so separate and distinct, that notwithstanding the admissions by the demurrer, the Court was justified in holding that the offenses charged were not the same act. An examination of the Thurston Case shows— and I have not had as much time to examine these cases as I would like to have had, because I have to rule promptly— an examination of the Thurston Case shows that the indictment in that case involved the question of larceny; where a person is charged with the stealing of goods belonging to A. he cannot be convicted for the stealing of goods belonging to B. That is true, of course, because to convict of larceny you have to prove the owner is not a different person, the very nature of the ownership or the possession of the property, and where the case could not be the result of one act. It remains to be seen that where a person kills two persons, that may be shown to be the result of the same act.

Counsel for the State has cited the case of *State v. Evans* 33 W. Va. 417, 10 S. E. 792, a West Virginia case. An examination of the Evans Case shows that the plea was not set out in that case, and I have not the benefit of knowing exactly what was alleged in the special plea set up. The Court held in that case that it could not be one act, because the circumstances alleged showed that there was aggravation from one separate and distinct from the other. The Judge who rendered the opinion stated that he could conceive of a case in which the principle might apply, and he cited the case referred to by Mr. Raysor where an engineer was charged with killing a number of people through the negligent running of a train, and the plea interposed was that it was accidental; he was charged with

the murder of one of the passengers, and the jury rendered the verdict of accquital, and it was held that that was an adjudication, and no further criminal liability attached, and he could not be held for the death of other passengers resulting from the same act.

It is recognized by the Court that there may be cases where a person may kill more than one person as the result of the same act. That is one case. I can conceive of another case; a sheriff is charged with the custody and with the safety of the prisoners in jail; he stands there for the purpose of protecting those prisoners; an attack is made on him, and he kills ten men, and he is called for trial for the killing of one of the ten men; he sets up the defense that he killed the ten men in the discharge of his official duty; that a mob came there for the purpose of taking the prisoners from the jail, and in defense of their lives he took the life of ten men who were killed. He is tried for killing one of those men, and that question is submitted to the jury, and the jury say he is not guilty; that he was excusable in taking life. There is one act and one purpose to protect the prisoner; that is an adjudication the sheriff acted within the law. There is an instance where the sheriff shot repeatedly, but it was from one design and one purpose, and an adjudication in one case would be an adjudication in all.

No one can testify as to the intent of a person. I cannot testify as to what is in the mind of any other man, but I can testify as to my own intent, and the only person who can testify as to the intent of any person is that person himself. We have in this paper here, admitted by the demurrer, the declaration of the defendant under oath that he had one purpose and one intent, and that was to defend himself against his aggressors. It has been held in a number of cases that the defendant may testify as to

his purpose and intent. That is the only evidence we have in the case, and that is admitted by the demurrer.

I am sorry that the State admitted these facts in the demurrer. I am called on to rule on this paper with an admission on behalf of the State; it becomes a question of law, and I am bound; I could not rule otherwise with this admission of intent, the admission of one purpose and one act; I could not rule otherwise than that the demurrer must be overruled in the case, and therefore it becomes a question of law and it being admitted that the killing of the three men was the result of one impulse, and it being alleged that it was done in defense of the defendant's home and person, I cannot say that that does not state a proper defense.

I will have to overrule the demurrer and, for the reasons stated above, the demurrer is overruled."

*Messrs. A. J. Hydrick, Solicitor, T. M. Raysor* and *Adam H. Moss,* for the State, appellant, cite: *Former jeopardy*: Sec. 17, Art. 1, Const. 1895. *Inhibition is as to "the same offense," not the "same act"*: 46 S. C. 15; 65 S. C. 190; 2 N. & McC. 280; 2 McMull, 395; 8 Rich. 322; 50 L. Ed. (U. S.) 1071; 16 C. J. 263; 55 L. Ed. (U. S.) 490; 59 L. Ed. (U. S.) 1153. *Nature and requisites of the plea*: 4 Black. Com. 335; 1 Archbold Crim. Prac. & Pl. 348; Clark's Crim. Prac. 405; 76 S. C. 74; 50 L. Ed. (U. S.) 1071; 12 Pick. 502; 1 Bish. Crim. L. 1051; 24 Conn. 57, 63, 64; 86 S. C. 299; 20 S. C. 351; 100 S. C. 77; 9 Yerg. (Tenn.) 357; 92 Am. St. Rep. 120; 2 N. & McC. 280; 86 N. C. 650; 52 N. W. 775 (Wis.); 53 Miss. 439; 2 McMull. 382; 5 Porter (Ala.) 523; 1 Park Cr. 338; 2 Mass. 409; 2 Va. Cas. 273; 65 Cal. 138; 14 Stan. Enc. of Proc. 597; 65 S. C. 190. Rule in 2 A. L. R. 593 has not been followed in S. C.; 2 Van· Fleet's For. Adjudi., par. 622.

*Messrs. Wolfe & Barry, Cole L. Blease, Mendel L. Smith, J. L. Dukes, James H. Fanning* and *B. J. Wingard,*

for respondent, cite: *Plea of former jeopardy was correctly sustained*: 2 A. L. R. 593 (Tex.); 49 L. Ed. (U. S.) Arch. Crim. Pl & Pr. (23rd Ed.) 170; 2 McMull. 382; 76 S. C. 72; 86 Ala.      ; 66 Miss.      ; 65 Ind.      ; 3 A. L. R. 516; 219 U. S., 219; 2 Bish. New Crim. Proc. p. 640, Sec. 830; Id. p 6.33, note 59, Sec. 816; Id. p. 630, Sec. 1, par 814; Id. p. 635, Sec. 817; 4 Black Com. (Lewis's Ed.) 335-6, and foot notes. *Right to protect home*: 102 S. E. 333; 79 S. C., 149. *Order of Circuit Judge sustaining plea amounts to a verdict of "not guilty":* Hughes Crim. L. & Proc., p. 671, Sec. 2593, notes 15 and 16; Id. p. 672, Sec. 2594, note 16; 2 Bish. New Crim. Proc., p. 628, note 20; Id. pps. 640, 633, 630, 635; 4 Black. Com. (Lewis's Ed.) 335-6), and notes; 3 A. L. R. 516; 219 U. S. 219. *Where same act results in death of more than one, it is but one crime*: 12 Cyc. 289. *In the Sonnerkalb Case the two men shot were not assaulting the defendant jointly and in confederacy*: 2 N. & McC. 280.

October 10, 1921.

The opinion of the Court en banc was delivered by MR. JUSTICE COTHRAN.

At the May term of the Court of General Sessions for Orangeburg County true bills upon separate indictments were returned against the defendant, charging him with the murders respectively of Bryan Salley, Julian Cooper and Hugh Fanning, on March 27, 1920. At the September term he was tried upon the indictment charging him with the murder of Bryan Salley, and was acquitted. At the following January term he was called for trial upon the indictment charging him with the murder of Julian Cooper. He thereupon filed a plea of former acquittal, based upon the proposition that the three homicides, resulting from a single act, intent, impulse, and volition, constituted but one offense, and that, having been acquitted

of any criminality in connection therewith, as evidenced by his acquittal as stated, he was entitled to be discharged.

To this plea the State demurred, upon the ground that the indictment in the case in which the acquittal occurred and that in the case at bar show that the offenses charged in the two indictments are distinct and different and require proof of distinct and different facts.

The Circuit Judge heard argument upon the plea and the demurrer, and orally announced his ruling (which is incorporated in the record and should also be in the report) overruling the demurrer. He then passed a formal order, reciting the fact that he had overruled the demurrer, and adjudging that the plea of former acquittal be sustained. From said ruling and order the State appeals.

Upon the presentation of the plea two courses were open to the State: To traverse the plea or to demur.

The State adopted the latter course, and the legal effect thereof was to admit the allegations of fact contained in the plea. *State v. DeWees,* 76 S. C. 74; 56 S. E. 674; 11 Ann. Cas. 991.

The question at issue must therefore be decided upon the plea, the demurrer and the two indictments, without reference to the testimony taken upon the trial which has been had. It was unnecessary and improper that this testimony be incorporated in the record for this appeal. The exceptions of the State to the order of the Circuit Judge striking out this testimony in settling the case for appeal are therefore dismissed.

The main facts, pertinent to the present inquiry, alleged in the plea and admitted by the demurrer, are the following omitting those already stated herein and certain argumentative statements therein:

On the night of March 27, 1920, while the defendant was in his front yard, several men, among whom were Bryan Salley, Julian Cooper, and Hugh Fanning, advanced

upon him; that in self-defense, to protect his person and habitation from their joint and confederated attack, the defendant fired at them several times with an automatic revolver, firing as rapidly as the pistol would fire, not aiming particularly at any one of them, but shooting at them one and all, whereby the three men named were instantly killed; that in said shooting the defendant was actuated and moved by the same and identical impulse, a single act of volition to do anything and everything against said three men to protect his person and habitation against their joint and confederated aggression.

The validity of the defendant's plea of former acquittal depends upon a solution of the following questions, battle ground upon which the defendant has pitched this controversy:

(1) Were the three homicides a single act on the part of the defendant?

(2) If the three homicides were a single act on the part of the defendant, is he entitled to claim that the act constituted but one offense?

It is apparent that if each homicide was a separate act, then necessarily each act constituted a distinct and separate offense; or if the three homicides were a single act from which distinct and separate results flowed, each homicide was a separate offense.

1. Where the three homicides a single act on the part of the defendant?

The defendant so alleges in his plea, and now contends that the State by its demurrer has admitted that to be a fact. We do not so regard the demurrer. The allegation in the plea is nothing more than a characterization, in the interest of the defendant—an inference favorable to him, which he draws from certain alleged facts; the issue is one of law, therefore, not of fact; and a demurrer admits only facts.

As is declared by the Court in *State v. DeWees*, 76 S. C. 75, 56 S. E. 675, 11 Ann. Cas. 991:

"If the two indictments charged offenses which in their nature are so separate and distinct as to be incapable of legal identity, then defendant's allegation that they charged the same offense would not make it so, since the demurrer only admits the facts properly pleaded."

So here, when the defendant alleges the circumstances of the affray; that the three men and another were advancing upon him; that he shot them down, inferentially, one at a time; that he fired his pistol as rapidly as it would turn the cylinder; that he was determined to do anything and everything to stop their confederated aggression, which of course included as many shots and reloadings as might be necessary—it is not for him to decide or for the State to admit by its demurrer that such intense, determined, continuous and effective warfare, defensive though it may have been, was a single act.

Assume as we must that the defendant acted not in malice or in the hot blood of aggravation and exasperation, but in defense of his home and person, a circumstance which goes to the merits of his defense, and not to the discussion of the question whether or not his shooting down three men with separate shots was a single act, the circumstances cry out against his favorable interpretation. His purpose, as he states, was to halt this confederated aggression; at least four men were advancing upon him; he had a pistol as his weapon of defense; he knew that it fired only one shot at a time, he could not possibly kill all four at one shot; he necessarily, therefore, predetermined to fire at least four times, each firing being a separate act, and each, as events developed, followed by the fall of a man. The admitted facts, aside from the argumentative characterization of the shooting as a single act, show a predetermined and

pursued series of acts to shoot, and shoot, and shoot; to do "anything and everything against the three men * * * to protect his person and habitation." We are concerned here with what he did, not with the purpose; and in the attempted justification of his conduct he reveals the character of his conduct as a series of acts, and not a single act.

The authorities are simply overwhelming that under the circumstances stated the defendant was guilty of a separate crime (if a crime) against each one of his victims, and that the acquittal of one charge is not a bar to a further prosecution.

"But when one assaults or kills two persons by separate strokes, although in the same riot or affray, one acquittal or conviction of one assault or homicide is no bar to an indictment for another, as they are distinct acts." 12 Cyc. 289.

In *Gunter v. State,* 111 Ala. 23, 20 South. 632 56 Am. St. Rep. 17, the Court declared:

"If, in the same affray one person shoots and kills one person, and by a second act shoots and wounds another, in such case the two results, the killing of the one and the wounding of the other, by different acts of shooting, cannot be said to grow out of the same unlawful act, but out of two distinct acts, and the party shooting is responsible for the two results from the two separate acts, and may be indicted and punished separately for each."

In *Bell v. State,* 120 Ark. 530, 180 S. W. 186, the defendant was incensed with the sister of his wife, her husband, her father and her brother, on account of their alleged participation in the separation of himself and wife. He determined to exterminate the entire family; armed with a repeating shotgun he went to their home, and in turn killed each one. It was one intent, one volition, one transaction, one impulse. He was convicted of the murder

of the husband and sentenced to life imprisonment. Upon the trial for the killing of his wife's sister, he pleaded former conviction. The Court said:

"The Court did not err in overruling appellant's plea of former conviction. The conviction of appellant at a former term of the Court for the crime of murdering Eard Bearden was a conviction for an entirely separate offense than that of the murder of Abbie Bearden. The proof shows that the killings were not simultaneous; that they were not the result of one shot, but were the result of entirely separate acts. The question as to whether the murder of two persons by the same act would constitute but one offense is not presented. Therefore a conviction in one of the cases could not be set up in bar of a prosecution for the other."

In *Morris v. Territory,* 1 Okl. Cr. 617, 99 Pac. 760, the defendant claimed to have been attacked by father and son, and that in self-defense he killed them both, shooting as fast as he could with a shotgun and a pistol. The father was killed by shots from the gun; the son from the pistol, not more than thirty seconds later; the transaction was one; the intent, purpose, volition, impulse, were one. The defendant was acquitted of the murder of the father, and pleaded that acquittal as a bar to the indictment for killing the son. The Court, upon full discussion of the subject, ruled, quoting from the syllabus:

"If in the same affray a person shoots and kills one person, and by a second shot kills another person, he may be separately prosecuted for killing each of them, and may be properly acquitted in one case and convicted in the other."

In *Com. v. Anderson,* 169 Ky. 372, 183 S. W. 898, the defendant, in an alleged effort to defend himself against a confederated attack by two brothers, rapidly firing, killed one of them and wounded the other. He was acquitted

of murder in the one case, and to a separate indictment for assault upon the other brother pleaded former acquittal. The Court refused to sustain the plea, holding:

"But we have been unable to find any case holding that where, by two separate and distinct acts of the defendant, two separate and distinct offenses were committed, they could in any sense be called 'the same offense' as is required to successfully invoke the constitutional provision. The fact that these two disinct offenses were committed in close proximity as to time, and while engaged in one affray, cannot be allowed to unify the two offenses, when as a matter of fact they are not so. The time intervening between the commission of the two offenses can have no effect on the case whatever"—citing 12 Cyc. 289, and many cases from Kentucky; *Keeton v. Com.,* 91 Ky. 522, 18 S. W. 359; *Com. v. Browning,* 146 Ky. 770, 143 S. W.

The case of *Com. v. Browning,* 146 Ky. 770 143 S. W. 407, cited in the Anderson Case, is stronger for the defendant than the Anderson Case or the case at bar, and while we are not called upon to approve its conclusions, the facts are interesting in this connection and its reasoning instructive. In that case the defendant with one shot from a pistol wounded two men with whom he was engaged in a fight. Defendant was convicted of assault upon one of the men, and to a separate indictment for assault upon the other he pleaded former conviction. The Court overruled the plea, saying:

"Manifestly, appellee, if first tried for the shooting and wounding of Caywood, could not be convicted on proof that he shot Stewart, though both Caywood and Stewart were wounded by one and the same shot. As well might it be argued that, in the killing of several of the same family by putting poison in the food eaten by them, conviction of the prisoner for the death of one of them would bar a prosecution for the killing of the others. * * *

25—S. C. 117

"The offenses committed by appellee were not included within one another, though resulting from the same act, but were separate and distinct offenses. Therefore he was not protected by Section 13, Bill of Rights against a prosecution for either by a conviction or acquittal for one of them."

In *Keeton v. Com.*, 91 Ky. 522, 18 S. W. 359, it was held, quoting from the syllabus:

"Presenting a pistol at two persons at the same time, coupled with a demand of their property, and compelling a surrender thereof by both at the same time, constitutes distinct offenses against them—an assault on and robbery of each."

. In *Kelley v. State*, 43 Tex. Cr. R. 40, 62 S. W. 915, the defendant and the two De Walt brothers were working in adjoining fields, a wire fence separating them; one of the De Walts accused defendant of sending a valentine reflecting upon their sister; hot words ensued, and the two De Walts made for the defendant and as they were in the act of breaking down the strands of wire to cross the fence to attack the defendant, he fired, killing one and wounding the other. He was tried for the murder of the one killed, and acquitted; upon the trial for assaulting the other, he pleaded former acquittal. The Court held that the plea was insufficient.

In *Augustine v. State*, 41 Tex. Cr. R. 59, 52 S. W. 77, 96 Am. St. Rep. 765, the defendant was one of a mob which fired at and killed two men, they being killed by different shots from different members of the mob. The defendant was acquitted of the murder of the one whom he had not shot, and upon trial for the murder of the other, whom he had shot, he pleaded former acquittal. The Court overruled the plea, saying:

"But here the testimony shows that the parties were killed by distinct acts. Mr. Bishop says: 'Obviously, there

is a difference between one volition and one transaction, and on the view of our combined authorities there is little room for denial that in one transaction a man may commit distinct offenses of assault or homicide upon different persons, and be separately punished for each.' "

In *State v. Robinson*, 12 Wash. 491, 41 Pac. 884, the defendant in an affray killed two men, Schultz and Smith; he was acquitted of the murder of Schultz, and then, upon trial for the murder of Smith, he pleaded former acquittal. We quote at length from the interesting opinion of the Court:

"It follows that, if the killing of each of the men constituted a distinct crime, there was no proof tending to show that the appellant had been formerly acquitted of the crime alleged to have been committed in the killing of Smith. The fact that the same line of proof was introduced for the purpose of showing that he was guilty of the killing of Schultz as that introduced to show his guilt in the killing of Smith would in no manner tend to show that an acquittal for the killing of the former would constitute an acquittal for the killing of the latter, if the killing of each was a distinct crime. That such proofs in reference to two prosecutions for the commission of a single offense would be proper to go to a jury upon the question of former acquittal or conviction is beyond question, but to us it seems equally clear that proof which was necessary and competent to convict of one crime would have no weight upon such question in the prosecution for another, even although the same criminating circumstances were relied upon in the latter as in the former case. Was the killing of each of these men a distinct crime? They were killed in a single affray, and the connection of the appellant was substantially the same in his relations to such affray, as it related to each of these men. If the result of the meeting at which the two were killed had been the death of only

one of them, a prosecution for murder could have been founded upon his death, and under the circumstances of this case this would have been true whether the one so killed had been Schultz or Smith; and there can be no good reason why that which would have warranted a prosecution for murder should lose force by reason of the fact that another circumstance, which in itself would warrant such a prosecution, occurred at the same time and place. If the prosecution had been founded upon the killing of the two, and the case had gone to trial upon a plea of not guilty, proof of the killing of either of them would have warranted a conviction. It follows that the killing of each was, so far as the homicide was concerned, a distinct transaction. The taking of a human life with certain intent constitutes murder, and neither law nor public policy will justify a holding that each life is of less value when taken with another than it would be if taken alone. If a person without justification intends to kill A and does so, he will be guilty of a crime; if he intends to kill B he will be guilty of another and a different crime; and the fact that he entertains the intent to kill both, and carries such intent into effect at the same time and place, should not be held to make of that which would otherwise be a foundation for two distinct prosecutions a foundation for only one. In our opinion, the undisputed proofs, when interpreted in the light of the law which it was the duty of the Court to find, clearly showed that the appellant had never been on trial for the killing of Smith."

In *Winn v. State,* 82 Wis. 571, 52 N. W. 775, the defendant had an altercation with one De Foy in a saloon, and was assaulted by him; he went home, secured a pistol, and returned; De Foy was on the sidewalk with others, including one Coates; the defendant snapped his pistol at De Foy, and in the struggle to disarm him the pistol was discharged, killing Coates; the defendant was ac-

quitted of the murder of Coates, and was then indicted for the assault on De Foy; he pleaded former acquittal. The Court disallowed the plea, holding:

"The rule is that the offenses charged in two indictments are not identical unless they concur both in law and in fact, and that the plea of autrefois acquit or convict is bad if the offenses charged in the two indictments be distinct in law, no matter how closely they are connected in fact. In order to determine whether there is a concurrence in law, that is, whether a conviction or acquittal on one indictment is a good bar to a prosecution on another, the true inquiry is whether the first indictment was such that the accused might have been convicted under it by proof of the facts alleged in the other indictment. If he could not, the conviction or acquittal under the first indictment is no bar. The result of an application of this test to the present inquiry is obvious. Winn could not have been convicted of the murder of Coates merely upon proof that he made a felonious assault upon De Foy. Proof that he killed Coates would also be required. Hence an acquittal on the information charging the murder of Coates is no bar to this information for a felonious assault on De Foy, and the special plea was properly overruled."

In a note to *Roberts v. State* (Ga.) 58 Am. Dec. 540, Judge Freeman says:

"When same act constitutes two or more distinct offenses, each is separately indictable. The defendant may be separately punished for each offense, and an acquittal, or conviction, or pardon, of one of these distinct offenses is no bar to the prosecution of the others. [Citing cases.] And the test will here apply. In each case the plea of autrefois acquit or convict is bad, because the facts of the two offenses are different. The proof of the allegations of the second indictment would not secure a legal conviction

under the allegations of the first.   A well-settled example of this—of two offenses distinct from each other, arising from the same act—occurs when the criminal act affects two different persons"—citing *State v. Fife,* 1 Bailey, 1.

Further the learned annotator observes:

"So where the defendant, by his act, injures in fact two or more persons, though it be accomplished in the same transaction, yet as many distinct offenses are committed. The facts of one are materially variant from those of the other.   Such is the case where two or more persons are shot at the same time."

We conclude, therefore, that the killing of Bryan Salley physically could not have been the same act as that which took the life of Julian Cooper, and that the law, so far from compelling a disregard of what we know the fact to have been, is in harmony with the dictates of reason, physical laws, and common sense.

2.   If the three homicides were a single act on the part of the defendant, is he entitled to claim that the act constituted but one offense?

Assuming, however, for the sake of argument that the defendant's contention in this regard may be sustained, it by no means follows necessarily that but a single offense has been committed.   On the contrary, the rule in this State is that under certain circumstances more than one offense may follow from a single act.

In *State ex rel. Burton v. Williams,* 11 S C. 292, the Court declared:

"And of the other result—that of subjecting an offender to two punishments for the same act, not the same offense —it may be said that it is not so monstrous as might at first be supposed, inasmuch as we find that our own Courts have decided that for the same act a man may be twice

punished, because by the one act he has violated two distinct statutes of the State, committed two distinct offenses, and is therefore liable to two distinct punishments."

In *State v. Switzer,* 65 S. C. 187, 43 S. E. 513, the Court says:

"It is not sound to say unqualifiedly that more than one criminal offense cannot be predicated upon a single act; for when a single act combines the requisite ingredients of two distinct offenses, the defendant may be separately indicted and punished for each, as shown in *State v. Taylor,* 2 Bailey 49, and *State v. Thurston,* 2 McM. 395."

In *State v. Thurston,* 2 McMul. 382, the defendant was charged in three separate indictments with having stolen at the same time cotton belonging to three separate individuals. The act, intent, and volition was one and the same. The Court held (quoting from syllabus):

"That the cotton so stolen by the defendant belonged to three different individuals, and he was very properly indicted in three cases, and a conviction in one case was no bar to a conviction in the two others. The stealing of the goods of different persons is always a distinct larceny."

In *State v. Sonnerkalb,* 2 Nott & McC. 280, the defendant raised the question of being liable to two indictments for separate offenses both growing out of a single act. The Court said:

"But let it be admitted that the defendant committed phisically but one act; two offenses may be committed by one act, even at the common law; a person fires a gun, kills one, and wounds another; if he escapes for the homicide (that is, if his life be not taken), he may be indicted for the assault on the other; or suppose he severely wounded two, he may be indicted for two assaults."

In *Hellams v. Switzer,* 24 S. C. 39, the action was brought by several plaintiffs severally owning land claiming damages on account of a dam of the defendant. The Court

held that they could not maintain a joint action; that their injuries were several. The opinion contains this statement pertinent to the pending issue:

"The principle underlying is that it is not the act, but the consequences, which are looked at. Thus, if two persons are injured by the same stroke, the act is one, but it is the consequences of that act, and not the act itself, which is redressed; and therefore the injury is several."

In a full note by Judge Freeman to *People v. McDaniels* (Cal.) 92 Am. St. Rep. 120, he points out the two lines of decisions in reference to a single act causing death to two or more persons, placing this State in line with others holding that two offenses have been committed, though rather leaning to the opposite holding. He points out very clearly, however, that whatever doubt may exist upon that proposition there is none where more than one act has been committed. He says:

"If one shot is fired and injures two people, there is, as we have seen, a conflict of authority as to the possibility of separate and successive prosecutions. But where several shots are fired, each injuring one person, the mere propinquity, in point of time or action, of the two assaults does not make them a single assault, and all authorities agree in holding that there may in such case be as many prosecutions as there were assaults."

A familiar illustration of the rule is where the single act is a separate and distinct offense under municipal, state, and federal statutes, or where the single act is a distinct infraction of more than one State statute. Surely if a single sale of liquor may constitute three statutory offenses, or if a single act of theft may constitute more than one offense, a single murderous shot may constitute a separate offense as to each human being whose life is cut short. If a malpracticing physician in producing an abortion should cause the death of the mother and of the child breathing after

its forced birth, can there be a question that from his single act, actuated and moved by a single intent, impulse, and volition, there would spring three separate offenses?

If, the act being single, only one offense has been committed, the rule should apply to civil actions as well as to criminal prosecutions; and yet we do not apprehend that, if the defendant should have prevailed in an action by the administrator of Bryan Salley for damages on account of his alleged wrongful death, he could defeat a similar action by the administrator of Julian Cooper upon the ground of former adjudication; or that that rule would apply in the case of a negligent collision at a railroad crossing by which the lives of several persons were lost. It would indeed be anomalous to hold in the criminal prosecution that the act was single, and only one offense was committed, and in the civil actions the act was single and several offenses (civil) were committed; the plea of former adjudication being sustained in the one case and denied in the other upon opposite conclusions from the identical state of facts.

Mr. Van Fleet in his work on Former Adjudication, vol. 3, par. 622, states that the rule that, if several persons are injured in person or property by the same act, there is but one offense, is maintained in the Courts of several States named, but that the contrary is held in Arkansas, California, Kentucky, New York, South Carolina, and Virginia.

There is another view of this question which, however, it is really not necessary to discuss, in view of the foregoing conclusions, but which is equally fatal to the defendant's plea. The constitutional provision invoked is:

"Nor shall any person be subject for the same offense to be twice put in jeopardy of life or liberty." Const. Art. 1, § 17.

Note that the identity of the offense, and not the act, is referred to. Hence, in order to claim the benefit of

this protection it must be made to appear that the latter indictment contains a charge of the same offense of which the defendant may have previously been acquitted or convicted.

From a common-sense, layman's view there could be no hesitation in saying that the first indictment charges the murder of Bryan Salley, one distinct crime; the second, of Julian Cooper, another distinct crime. But we are expected to throw to the winds this chart and compass, and be guided by a strained technicality of the law. The law does not compel this conclusion. In determining the question of the identity of the offenses, the law prescribes the following test:

In *State v. Glasgow*, Dud., the Court declares:

"The test by which the question is to be determined, whether a former conviction is a bar to another prosecution, is this: Would the evidence necessary to support the second indictment have been sufficient to procure a legal conviction on the first?"

The same test is applied in the case of *State v. Thurston*, 2 McMul. 382, and in *State v. Risher*, 1 Rich. (S. C.) 219, in practically the identical terms, In *State v. Parish*, 8 Rich. (S. C.) 322, the Court declared (referring to former conviction):

"To constitute this a good defense the offense must be identical or necessarily included the one within the other."

In *State v. Jenkins*, 20 S. C. 351, the Court lays this down as the test:

"Could the accused have been convicted at the first trial and under the first indictment of the offense charged in either of the other two? * * * If, then, the accused could not, under any circumstances, have been convicted of the present offense in the former trial, how then can it be said that upon the present trial, he has been put in jeopardy twice for the same offense?"

In *State v. Switzer,* 65 S. C. 187, 43 S. E. 513, the Court says:

"In determining whether both indictments charged the same offense, the test generally applied is 'whether the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first.' "

In *State v. Switzer,* 65 S. C. 191, 43 S. E. 513, it is held that the plea of former acquittal must be sustained when it appears that the offense charged in the second indictment is not legally distinct from that in the first.

In *State v. Van Buren,* 86 S. C. 297, 68 S. E. 568, the Court declares:

"The test laid down as useful and generally adequate, though not infallible, by which it may be decided whether two indictments charge the same offense, is: 'Would the evidence necessary to support the second indictment have been sufficient to procure a legal conviction upon the first?' "

In *State v. Rodgers,* 100 S. C. 77, 84 S. E. 304, the same test was applied as in the case of *State v. Jenkins,* 20 S. C. 351.

In *Burton v. United States,* 202 U. S. 344, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362, it is said:

"A plea of autrefois acquit must be upon a prosecution for the same identical offense. 4 Bl. 336. It must appear that the offense charged, using the words of Chief Justice Shaw, 'was the same in law and in fact. The plea will be vicious, if the offenses charged in the two indictments be perfectly distinct in point of law, however nearly they may be connected in fact.' "

In *Ebeling v. Morgan,* 237 U. S. 625, 35 Sup. Ct. 710, 59 L. Ed. 1151, it is said:

"The principle applied in *Gavieres v. United States,* 220 U. S. 338, is applicable, where this Court held that, when in the same course of conduct, and upon the same oc-

casion, certain rude and boisterous language was used, and an officer insulted, two offenses were committed, separate in their character, and this, notwithstanding the transaction was one and the same. The principle stated by the Supreme Judicial Court of Massachusetts in *Morey v. Commonwealth*, 108 Mass. 433, was applied, where it was held that a conviction upon one indictment would not bar a conviction and sentence upon another indictment, if the evidence required to support the one would not have been sufficent to warrant the conviction upon the other without proof of an additional fact."

In *Morgan v. Devine*, 237 U. S. 632, 35 Sup.. Ct. 712, 59 L. Ed. 1153, it is said, quoting from Bishop:

"The test is whether, if what is set out in the second indictment had been proved under the first, there would have been a conviction; when there could, the second cannot be maintained; when there could not, it can be."

In *Blair v. State*, 81 Ga. 629, 7 S. E. 855, the rule is thus stated:

"If the evidence required to convict under the first indictment would not be sufficient to convict under the second indictment, but proof of an additional fact would be necessary to constitute the offense charged in the second indictment, then the former conviction or acquittal could not be pleaded in bar of the second indictment."

In note to *Com. v. Vaughn* (Ky.) 45 L. R. A. 858, it is said:

"For this reason, therefore, a conviction of one offense will not bar a prosecution for the other, or entitle the defendant to the plea of former jeopardy, autrefois convict, or autrefois acquit, as such plea can only avail a defendant who has already been convicted or acquitted upon the same charge or offense for which he is charged the second time, or, in other words, when the two offenses are identically the same."

In *Morey v. Com.,* 108 Mass. 433, cited with approval in *Gavieres v. United States,* 220 U. S. 342, 31 Sup. Ct. 422, 55 L. Ed. 489, it is said:

"A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other. The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense."

The Massachusetts case was also cited with approval in *Carter v. McClaughry,* 183 U. S. 394, 22 Sup. Ct. 193, 46 L. Ed. 236, where the Court said:

"The offenses charged under this article were not one and the same offense. This is apparent if the test of the identity of offenses that the same evidence is required to sustain them be applied. The first charge alleged 'a conspiracy to defraud,' and the second charge alleged 'causing false and fraudulent claims to be made, which were separate and distinct offenses, one requiring certain evidence which the other did not. The fact that both charges related to and grew out of one transaction made no difference."

In *Kelley v. United States,* 258 Fed. 392, 169 C. C. A. 408, it is said:

"This was in effect a plea of autrefois acquit. Such a plea, however, is unavailing unless the defense presently charged is precisely the same in law and fact as the former one relied on under the plea; thus, as Mr. Justice Harlan said in *Burton v. United States,* 202 U. S. 344, 380, 26 Sup. Ct. 688, 698, 50 L. Ed. 1057, 6 Ann. Cas. 262), in adopting language of Chief Justice Shaw, it must appear that the offense charged 'was the same in law and in fact. The plea will be vicious, if the offenses charged in the two

indictments be perfectly distinct in point of law, however nearly they may be connected in fact.' "

In *Bens v. United States* (C. C. A.) 266 Fed. 152, it is said:

· "The prohibition of the Constitution is against a second jeopardy for the 'same offense'; that is, for the identical crime. The offenses charged in 'the two prosecutions must be the same in law and in fact. *Burton v. United* States, 202 U. S. 344, 26 Sup. Ct. 688 50 L. Ed. 1057, 6 Ann. Cas. 392; *Thomas v. United States,* 156 Fed. 897, 84 C. C. A. 477, 17 L. R. A. (N. S.) 720, 16 C. J. 263. If the · facts which would convict on the second prosecution would not necessarily have convicted on the first, then the first will not be a bar to the second, although the offenses charged may have been committed in the same transaction."

In *United States v. Farhat* (D. C.) 269 Fed. 33, it is said:

"The test of identity of offenses, when double jeopardy is claimed, is whether the same evidence ·is required to sustain them. If not, then the fact that both charges relate to and grow out of one transaction does not make a single offense, where two are defined by the statutes."

In *People v. Majors,* 65 Cal. 138, 3 Pac. 597, 52 Am. Rep. 295, the defendant had counseled and advised another to rob a certain man at his home; the emissary took with him a confederate; they found unexpectedly a friend at the home of the man and robbed him; in the attempt to carry out the design of robbery both the man to be robbed and his friend were killed at the same time by the emissary and his confederates. The defendant was convicted of murder in the case of the man who was to have been robbed, and to an indictment in the case of his friend he pleaded former conviction. The Court overruled the plea, saying (quoting from syllabus):

"The murder of two persons constitutes two separate crimes, for each of which a defendant is liable to a separate prosecution and trial, though the killing be by the same act; and a conviction or acquittal in one case does not bar a prosecution in the other on the plea of once in jeopardy."

Applying this test, it must be apparent that the plea must fail. In the first case, the defendant was charged for the murder of Bryan Salley. The State was required to make good the allegation that the defendant took the life of Bryan Salley; it was compelled to prove the corpus delicti. In the second, the same burden was upon it with reference to Julian Cooper, necessarily a difference in the proof. The proof of Cooper's death would not have answered the obligation resting upon the State in the first case to prove the death of Salley and, conversely, the same could be said of the second case.

In *People v. Alibez,* 49 Cal. 452, an indictment charged the defendant with the murder of three persons by the administering of strychnine at the same time. The Court arrested the judgment upon the ground that three distinct offenses had been charged in one indictment.

We take occasion to say that it did not necessarily follow from the order overruling the demurrer that the defendant was entitled to an order sustaining his plea of former acquittal. Assimilated to demurrers in civil action, the demurrant is usually accorded the privilege of answering over; and doubtless this privilege, that of traversing the plea, would have been allowed the State if it had been applied for. In the absence of such a request the defendant was entitled to and the Circuit Judge was authorized to pass the order in question, subject, of course, to review on appeal.

The judgment of this Court is that the order appealed from be reversed, and that the case be remanded to the Court of General Sessions for Orangeburg County for trial.

MR. CHIEF JUSTICE GARY, MR. JUSTICE FRASER, and PRINCE, WILSON, SEASE, FRANK B. GARY, MOORE, BOWMAN, TOWNSEND. and PEURIFOY, Circuit Judges, concur in the opinion of MR JUSTICE COTHRAN.

DE VORE and RICE, Circuit Judges, concur in the result.

MR. CHIEF JUSTICE GARY: The defendant was charged in three separate indictments for the murder of Bryan Salley, Julian Cooper, and Hugh Fanning. He was tried under the indictment charging him with the murder of Bryan Salley, and the jury rendered a verdict of not guilty. At the next term of the Court he was called upon to answer to an indictment charging him with the murder of Julian Cooper, and he set up the plea of former jeopardy. It does not appear that a motion was made to consolidate the cases and try them together. If they had been tried at the same time, and the jury had rendered a verdict of not guilty as to the homicide of Bryan Salley alone, the defendant could not again have been placed in jeopardy. But those were not the facts. Having failed to make such motion, he was not in jeopardy for the killing of Julian Cooper when he was only tried for the murder of Bryan Salley.

It would be an anomally to allow a plea of former acquittal, unless there had been a former trial for the homicide of Julian Cooper.

MR. JUSTICE WATTS: For the reasons assigned by Judge Shipp, I think the exceptions should be overruled and the judgment affirmed.