# Wytheville.

## W. E. Seymour, W. O. Jones, E. P. Graham and B. W. Ennis v. Commonwealth.

### June 15, 1922.

1. Autrefois, Acquit and Conflict—*Two Homicides Arising Out of the Same Affray—Introduction of same Evidence of Conspiracy and Attempt at Robbery in Second Trial for Homicide where same Evidence was Introduced at First Trial and Accused Acquitted—Case at Bar.*—In an affray arising from an alleged attempt at robbery by accused, two persons were killed. On the trial for the murder of one of these persons accused were acquitted. On a second trial for the murder of the other person, accused filed a special plea of *res judicata*, praying the court to exclude from the consideration of the jury all evidence as to the robbery or attempted robbery, or conspiracy to commit robbery, for the reason that on the previous trial, on substantially the same evidence, defendants were duly acquitted. In other words, the alleged plea was merely a prayer to exclude certain testimony which had been introduced at their previous trial for a different homicide.

   *Held:* That there was no error in rejecting this plea and admitting the testimony in question.

2. Autrefois, Acquit and Convict—*Former Jeopardy—Method of Raising Question.*—The proper method of raising the question of former jeopardy is by special plea of former acquittal or conviction.

3. Autrefois, Acquit and Convict—*Former Jeopardy—Conspiracy—Different Crimes.*—One charged with a substantive offense committed in pursuance of a conspiracy cannot plead former jeopardy based upon a previous conviction or acquittal of another similar, but distinct, offense committed in pursuance of the same conspiracy.

4. Autrefois, Acquit and Convict—*Former Jeopardy—Evidence Offered at Another Trial of Accused for a Different Offense.*—The protection which is guaranteed to persons accused of crime is that they shall not be placed twice in jeopardy for the same offense. There is no constitutional or statutory guaranty that evidence offered upon the trial of an accused person for a different offense from that of which he was either convicted or acquitted may not thereafter be offered to prove a distinct but related offense.

5. Jury—*Exclusion of Competent Juror.*—That a competent juror was excluded from the panel is not error. It is altogether different when an incompetent juror is accepted, because an accused person is

Statement.

entitled to a fair jury, but, if he gets a fair jury, he has no right to complain that other fair jurors were not sworn to try his case.

6. Homicide—*Conspiracy—Conversation of Conspirators.*—On a trial for homicide an assignment of error relating to the admission of testimony as to a conversation between some of the alleged conspirators on the morning after the homicide was without merit, where the court expressly limited the effect of this testimony and instructed the jury that it could not be considered except as against those of the accused who were present.

7. Homicide—*Conspiracy—Evidence as to other Crimes.*—On a prosecution for homicide arising out of an attempted robbery by accused on a ship in harbor, the court did not err in permitting testimony as to recent previous robberies of ships by accused, acting together, where it told the jury that they could only consider this testimony in connection with and as explanatory of the intent, purpose, and plan of the accused on the night of the crime, and they could not consider it as proof that the accused or any of them had committed other offenses not charged in the indictment.

8. Homicide—*Instructions—Sufficiency of Instructions.*—On a prosecution for homicide, no valid complaint can be made of the instructions where twelve were granted upon motion of the defendants without change, and four more offered by them were slightly modified by the court, and these fully and clearly presented every theory justified by the evidence introduced in behalf of the defendants, and accorded them every right; while those of the Commonwealth followed the established precedents, and no valid objection was suggested as to any of them.

9. Criminal Law—*Presence of Accused—Continuance—Suspension of Trial on Account of Sickness of One of Accused.*—One of the defendants on trial for homicide was taken ill in jail, so that upon the advice of physicians the trial was suspended from time to time during two days because of his absence from the courthouse. Code of 1919, section 4894, provides that a person tried for a felony shall be personally present during the trial, but it also provides that a motion for a continuance, whether made before or after the arraignment, shall not be deemed a part of the trial.

*Held:* That these suspensions were no part of the trial, and were no grounds for a reversal of the conviction of accused. The right of accused to be present was not thereby denied, but, on the contrary, accorded.

10. Criminal Law—*Jurisdiction of Corporation Court—Homicide within One Mile of the City Limits.*—Where it clearly appeared that a homicide was committed within one mile of the city limits, the corporation court of the city has jurisdiction of the crime under Code of 1919, section 5910.

Error to a judgment of the Corporation Court of the City of Norfolk.

*Affirmed.*

The opinion states the case.

*J. L. Broudy* and *Tazewell Taylor*, for the plaintiffs in error.

*John R. Saunders, Attorney-General; J. D. Hank, Jr., Assistant Attorney-General, Leon M. Bazile, Second Assistant Attorney-General*, and *E. R. F. Wells*, for the Commonwealth.

PRENTIS, J., delivered the opinion of the court.

The plaintiffs in error, who were jointly tried, have been found guilty of murder in the first degree and sentenced to twenty years confinement in the penitentiary. They, together with one J. G. Moore, who was the chief witness for the Commonwealth, were jointly indicted for the murder of one Hadie Sasaki, a member of the crew of a merchant vessel owned by a Japanese corporation, while the vessel was in the Elizabeth river a few hundred yards from the Lambert's Point pier.

The evidence upon which the Commonwealth relies to justify this conviction may be thus summarized: The accused were jointly engaged in illicit traffic in ardent spirits. Their customary method of securing much if not all of the liquor which they sold was to board foreign vessels while lying in the harbor, and, acting in concert, to negotiate for the purchase of liquor there held by members of the crew for sale. After making the bargain and having the liquor produced for delivery, they would display pistols and badges, impersonate officers and pretend to arrest the vendors of the liquor and sometimes members of their own party also, charging them with the illegal sale and purchase of intoxicating liquor, in violation of

the prohibition law (Laws 1918, c. 388). They would then take possession of such liquor as contraband and sell it as their own.

On the night of December 24, 1920, with a similar purpose in view, they boarded the Japanese vessel "Kaisho Maru," having learned that there was whiskey on board that ship for sale. There were six in the party, the five who were indicted and one Roy Tinder, who was taken on the launch which went out to the vessel, at the last moment, because Sterling, who was expected, failed to appear at the appointed time. They took with them three pairs of handcuffs, some flashlights, a pad of fifty to seventy-five blank search warrants, six badges, three being the badges of the United States Internal Revenue officers, one city of Norfolk policeman's badge, one Norfolk county special policeman's badge, and another described as "some kind of secret service" badge. Five of them had pistols loaded, and one, Graham, also wore a belt full of cartridges. Two of them boarded the ship and entered into negotiations with members of the crew, showing their money and pursuing their usual method. When these negotiations were concluded and a large quantity of whiskey (forty-five cases) had already been brought on deck for delivery to them as purchasers, a message was sent to the other four, who had remained on the launch, to come aboard to get the whiskey. Just about this time Jones disclosed his badge, alleging that they were officers of the law, and told the Japanese with whom they had negotiated that they were under arrest. They indicated their purpose to resist, and Jones drew a pistol and told one of them that he didn't wish to kill him but to lock him up. Some one commenced shooting, and the wireless operator of the ship and a fireman, both

Japanese, were handcuffed. Shortly thereafter the lights on the ship were turned off by an engineer, member of the crew, and there was a general affray in the course of which a number of shots were fired, one of the Japanese crew was killed, one mortally wounded, and two of the accused wounded. There are many other details of the affray and other antecedent and succeeding events which we think it unnecessary to recite.

Before this trial they had been tried for the murder of Shagji Miyau, who was killed at the time, and acquitted. Then followed this trial and their conviction for the murder of Hadie Sasaki, who was mortally wounded in the back during the affray and died about four o'clock the next morning.

There was contradiction by the defendants of the incriminating evidence of Moore, upon whose testimony their conviction chiefly rests, but there was also much corroboration, both in the testimony introduced in behalf of the accused as well as in that of the Commonwealth. As the jury credited the evidence for the Commonwealth, in which they were fully justified, it is clear that the judgment should be affirmed, unless there was some prejudicial error in the procedure.

[1] The precise question emphasized in the argument has never been raised, we believe, in this jurisdiction, but it has been much discussed elsewhere. The accused filed a paper, designated as a special ples of *res judicata*. It tenders no issue of fact, but prays that the court exclude from the consideration of the jury all evidence purporting to set up or charge them on the occasion in question with robbery or attempted robbery, and a conspiracy to commit the same, for the reason that on the previous trial for the

murder of Shagji Miyau, upon substantially the same evidence, the defendants and each of them were duly acquitted, and that as a result of that previous trial each and every issue involved and submitted to the jury, including the issue of robbery, or attempt to commit the same, or conspiracy to commit the same, was decided in favor of the defendants; and they allege that as the result of that previous trial the Commonwealth and the parties to the said indictment were fully and completely foreclosed and estopped from setting up or introducing evidence of said robbery or attempt to commit the same and conspiracy to commit the same, and other matters bearing upon said robbery and attempt to commit the same and conspiracy to commit the same, and concluded with an offer to verify. This plea was rejected.

It is seen that this alleged plea is merely a prayer to exclude certain testimony which had been introduced at their previous trial for a different homicide, and this before the testimony on this trial had been offered. Inasmuch, however, as this testimony was subsequently offered and a motion then made to exclude it, which was overruled, we will pass upon the question as properly raised.

It is observed that in substance it is an effort to secure the benefit of the immunity clause of the Constitution prohibiting persons accused of crime from being placed twice in jeopardy for the same offense, though it is admitted that inasmuch as this indictment for the murder of Hadie Sasaki charges a different crime from the one for which they had been already acquitted, neither the defense by plea of former acquittal nor immunity because previously in jeopardy could be successfully invoked. No indirection is neccessary when such immunity exists, for it may be confidently and successfully invoked.

[2] That the proper method of raising the question of former jeopardy is by special plea of former acquittal or conviction, seems to be well settled.   2 Whart. Cr. Ev., (10th ed.), sec. 592, and cases cited.

In *Justice* v. *Commonwealth*, 81 Va. 217, it is said: "But the doctrine of estoppel, strictly speaking, is not applicable to the Commonwealth in a criminal prosecution.   The nearest approach to it is the doctrine, founded on the maxim of the common law, that no one shall be twice put in jeopardy for the same offense. 'This doctrine,' says Bigelow, 'has a close relation to the subject of estoppel by former judgment, and may be considered as the criminal law counterpart of the same doctrine.   But the doctrine rests upon technical notions of jeopardy, and not upon the principle of *res judicata*,' etc.   Bigelow on Estoppel (3d ed.) 47."

While unprepared to say that no case can possibly arise in which the doctrine of estoppel or *res judicata* can be invoked against the Commonwealth, we are clear in our view that it cannot be invoked in this case.

In *Vaughan* v. *Commonwealth*, 2 Va. Cas. (4 Va.) 273, it is held that where one has been indicted for shooting one person and acquitted, and then indicted for shooting another, the plea of *autrefois acquit* will not be supported, although the same act of shooting is charged in each indictment, for the jury who tried the first indictment might have acquitted the prisoner on several grounds which would not affect the second trial.

In *Smith* v. *Commonwealth*, 7 Gratt. (48 Va.) 593, it is held that a conviction for advising, enticing and persuading one slave to abscond is not a bar to prosecution for advising, etc., another slave to abscond,

although the act of advising, etc., charged occurred as to both slaves at the same time and by the same words and acts.

In *McCoy* v. *State*, 46 Ark. 141, where there was a conflict in which a man was killed and his wife wounded in one and the same transaction, the defense that the accused had been acquitted of the charge of assault with intent to kill the wife did not prevent his prosecution on the charge of murder of the husband.

In *Jones* v. *State*, 61 Ark. 88, 32 S. W. 81, it is held that the fact that the act of killing two persons was so closely connected in point of time that it was impossible to separate the evidence relating to each of them, would not necessarily make the killing of the two one act or one offense, or the conviction for the killing of one a bar to a prosecution for the killing of the other.

In *People* v. *Majors*, 65 Cal. 138, 3 Pac. 597, 52 Am. Rep. 300, 5 Am. Crim. Rep. 486, it is held that where two persons were killed at the same point of time in pursuance of a design to rob, it does not render a conviction for the murder of one a bar to a prosecution for the killing of the other; and while admitting that there was authority to the contrary, the court said that the better rule and that established by the great weight of respectable authority, is that the murder of two persons, even by the same act, constitutes two offenses, for each of which a separate prosecution will lie, and that a conviction or acquittal in one case does not bar a prosecution in the other.

Other pertinent cases enforcing the same rule are, *Fews* v. *State*, 1 Ga. App. 122, 58 S. E. 64; *Johnson* v. *State*, 65 Ga. 94; *Baker* v. *Commonwealth*, 20 Ky. L. Rep. 879, 47 S. W. 864.

In *State* v. *Vines*, 34 La. Ann. 1079, 4 Am. Crim.

Rep. 296, it appears that pursuant to a conspiracy to kill one person, one of the defendants shot and killed the intended victim and the other defendant killed another person.    It was held that a plea of acquittal of one of the defendants and the conviction of the other defendant of manslaughter under an indictment charging murder of the intended victim, was not good in bar of a prosecution for killing the second person, and the court said that the killing of one was a totally distinct and different offense from the killing of the other, although both acts were done in execution of the same conspiracy; that they were not different grades of the same crime; they were not two felonies resulting from the same identical act; they were not different aspects of the same unlawful act; and that they bore no such relation to each other, as that one of them could be said to be merged in the other.    31 L. R. A. (N. S.) 720, note; *Teat* v. *State*, 53 Miss. 439, 24 Am. Rep. 708; *People* v. *Mendelson*, 264 Ill. 453, 106 N. E. 249, L. R. A. 1915C, 627.

[3] There is an illuminating note upon the precise question as applicable to cases where there is a conspiracy shown, in *Patterson* v. *State*, 96 Ohio St. 90, 117 N. E. 169, L. R. A. 1918A, 588.    It is there said that "one charged with a substantive offense committed in pursuance of a conspiracy, cannot plead former jeopardy based upon a previous conviction or acquittal of another similar but distinct offense committed in pursuance of the same conspiracy."    Citing *Wallace* v. *State* (1899), 41 Fla. 547, 26 So. 713; *State* v. *Barnes* (1910), 26 S. D. 268, 128 N. W. 170; *Augustine* v. *State* (1899), 41 Tex. Cr. Rep. 59, 52 S. W. 77, 96 Am. St. Rep. 765.    The recent case of *State* v. *Corbett* (S. C.), 109 S. E. 133, cites many additional authorities, though there the question was raised by plea of former acquittal.

[4] The case of *Patterson* v. *State, supra,* raises a question identical with that raised here. There the accused engaged in a criminal conspiracy having for its purpose the larceny of specific automobiles belonging to separate owners, and in pursuance of the plan his confederate stole the automobiles at different times and places, and it was held that each theft constituted a separate and distinct offense, and that the acquittal of one does not place him twice in jeopardy on the trial of the other. It is observed that there, as here, the evidence of the conspiracy was the same in each case. The protection which is guaranteed to persons accused of crime is that they shall not be placed twice in jeopardy for the same offense. There is no constitutional or statutory guarantee that evidence offered upon the trial of an accused person for a different offense from that of which he was either convicted or acquitted may not thereafter be offered to prove a distinct but related offense. If the Commonwealth is concluded here by the verdict of acquittal for the murder of Shagji Miyau, its effect would be to allow the adjudication of the issue there determined to operate as a substitute for a plea of former jeopardy, which plea clearly does not lie. If it be true that the effect of the former acquittal is to afford them immunity from trial for the murder of Hadie Sasaki, then it is not impertinent to inquire what would have been the effect of their conviction at that trial? Could it be successfully contended that the proof of the conspiracy and attempt to rob had been so conclusively established by the conviction of these defendants on that first trial for the murder of Miyau, as that it could not be questioned by them upon the second trial for the murder of Sasaki? Manifestly, this could not be true, but we are here asked to apply

the converse of that proposition to the Commonwealth and to hold that no evidence is admissible here as to such conspiracy merely because of their previous acquittal of the other homicide, and thereby to accord the accused an immunity which is not contemplated either by Constitution or statute, or based upon justice or reason.    The former acquittal may have resulted from many causes, and there is no sufficient justification for the assumption upon which the whole argument for the accused is based, namely, that on the former trial they were acquitted of a conspiracy to rob.    They were neither indicted nor tried for that offense.    They were indicted and tried for a specific murder and of that crime alone can it be truly said that they were acquitted.    It may be that in the interval the Commonwealth was able to strengthen the evidence against them.    Certainly it is true that at least four witnesses testified in this case who did not testify in the other, and the evidence of the dying declaration of Sasaki, in substance, that he was shot in the back by one of the conspirators while running away, which if believed conclusively shows the guilt of the accused, clearly would not have been admissible upon their former trial for the murder of Miyau.

The Commonwealth having the right to indict them for each homicide, though alleged to have been committed pursuant to the same conspiracy, has also the right to try them under each indictment—indeed, could not do otherwise—and having this right is entitled to introduce all of the evidence tending to prove the commission of the specific crime charged.    Whatever confusion there may be in the cases with reference to such a defense, no subtleties of reason can sustain it in this case; we find no precedent therefor; and the question was correctly determined by the trial court.

50

[5] There are numerous other errors alleged, as to which little discussion is necessary, because the rulings of the trial court are well supported by precedents in this State. Our failure to deal with them more in detail must be attributed to our indisposition to repeat propositions which need no repetition. Among these assignments is that the court rejected one of the veniremen. This question is settled by the case of *Fishburne* v. *Commonwealth*, 103 Va. 1023, 50 S. E. 443, where it is held that it is not error that a competent juror was excluded from the panel. It is altogether different when an incompetent juror is accepted, because an accused person is entitled to a fair jury, but if he gets a fair jury he has no right to complain that other fair jurors were not sworn to try his case. *Clore* v. *Commonwealth*, 8 Gratt. (49 Va.) 612.

[6] Another assignment relates to the admission of testimony relating to a conversation between some of the alleged conspirators on the morning after the homicide. Inasmuch as the court expressly limited the effect of this testimony and instructed the jury that it could not be considered except as against those of the accused who were present, this assignment is without merit.

[7] It is alleged that the court erred in permitting testimony as to recent previous robberies of ships by these defendants, acting together. The court carefully followed the ruling of this court made so long ago as *Trogdon* v. *Commonwealth*, 31 Gratt. (72 Va.) 862, and told the jury that they could only consider this testimony in connection with and as explanatory of the intent, purpose and plan of the accused on the night of December 24, 1920, at the time the crime here charged was committed, and that they could

not consider it as proof that the accused or any of them had committed other offenses not charged in the indictment; and this limitation was emphazised and their rights till further guarded by the court in giving an instruction offered by the accused. *State* v. *Briggs*, 122 Minn. 493, 142 N. W. 823; 1 Whart. Cr. Ev. (10th ed.), secs. 31, 39.

[8] Complaint is made of the instructions, but it is sufficient to say as to these that there were twelve granted upon motion of the defendants without change, and four more offered by them were slightly modified by the court, and these fully and clearly presented every theory justified by the evidence introduced in behalf of the defendants, and accorded them every right; while those of the Commonwealth followed the established precedents and no valid objection is suggested as to any of them.

[9] There is an exception growing out of this circumstance: Seymour, one of the defendants, on the morning of April 20, 1921, during the trial, was taken ill in jail, so that upon the advice of physicians the trial was suspended from time to time because of his absence from the court room, until 10 o'clock on the morning of April 22nd, when he was brought into court and then the trial proceeded. The statute, Code 1919, section 4894, provides that a person tried for a felony shall be personally present during the trial, but it also provides that a motion for a continuance, whether made before or after the arraignment, shall not be deemed a part of the trial. Certainly this suspension was no part of the trial. It would be indeed a reflection upon the common sense of those who administer and construe the law, if such a suspension, which was necessitated in order that the defendant might be present and thus to safeguard his rights, should be

held to be a denial of his rights and ground for reversal. His right to be present was not thereby denied, but on the contrary accorded.

[10] The twelfth assignment challenges the territorial jurisdiction of the trial court by demurrer and motion to quash. The indictment contained two counts, one alleging that the crime was committed in the Elizabeth river, between the city of Norfolk and the city of Portsmouth, and the other that it was committed between the city of Norfolk and the county of Norfolk. Code 1919, section 5910, provides that corporation courts shall have concurrent jurisdiction with the circuit courts over offenses committed in any county within one mile of the city, and the evidence shows that the offense was committed within 500 or 600 yards of the Lambert's Point pier, between that place and the county of Norfolk. It thus clearly appears that the court had jurisdiction, because the homicide was committed within one mile of the city limits.

*Affirmed.*