# Wytheville

## JOHNNY LAWRENCE v. COMMONWEALTH OF VIRGINIA.

June 14, 1943.

Record Nos. 2701 and 2702.

Present, All the Justices.

The opinion states the case.

*W. L. Devany, Jr.,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *M. Ray Doubles, Assistant Attorney General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

Johnny Lawrence is charged with having killed Alvin Montgomery. He was indicted for murder. His case was by consent submitted to the court and was heard without the intervention of a jury. Evidence was taken and by it a judgment of guilty entered. His punishment was fixed at six months' confinement in the county jail.

Montgomery's death grew out of a disastrous automobile accident which occurred on Highway 460 between Waverly and Wakefield at 6:45 p. m. on April 26, 1942.

Route 460 is a four-lane highway with two outside lanes constructed of concrete and the inside lanes of treated gravel. At the point of collision the road is straight and level. The day was clear and the roadway dry. Lawrence, in a Buick automobile, was traveling east. With him rode his wife, his sister and two friends. Two beach wagons were traveling west about 60 feet apart. The first was driven by Ralph Yonkers, and with him rode Alvin Montgomery and his wife. Montgomery and Yonkers were both killed. All the passengers in the Buick car were killed.

George Barnicle rode in the second beach wagon, following, as we have seen, that driven by Ralph Yonkers and 60 feet behind it. He saw the two cars approaching, the first being a station wagon, followed by the Buick. The Buick attempted to pass the station wagon and, as it did so, shot across the road from left to right and struck the left front headlight of the beach wagon driven by Yonkers. The point of impact was on the extreme left side of the passing lane for westbound traffic. R. E. Duvall, resident engineer of Suffolk county, made an examination of this ground on April 28. He saw a skid mark, apparently made by the Buick automobile, which, measured on a straight line parallel to the highway, was 80 feet from the point of beginning to the place of accident. It began in the passing lane for eastbound traffic, crossed over the center line of the highway at an angle of about thirty degrees, and ran for 54 feet diagonally across the gravel to the point of impact.

Objection is made to the evidence of Duvall. He could not, of his own knowledge, have known that this skid mark was made by the Buick automobile, but it must have been made by it; certainly it could not have been made by any other car.

Objection is made to the evidence of Barnicle. He said that the Buick car was traveling at about 70 miles an hour. Of course this is guesswork, but it went to the jury for what it was worth.

John Sullivan said that about 500 yards down the road from the point of accident the Buick car passed him. He

was going at a speed of forty miles an hour, and this Buick, when passing, was going 15 miles an hour faster.

There is the usual conflict in evidence as to the speed of these cars, but certainly the Buick car was going at a high rate of speed, else it would not have skidded 80 feet across the gravel-treated road.

W. B. Moncure, a State police officer, saw Lawrence on April 27, who told him that there was a blowout when he attempted to pass the station wagon, but that Lawrence was then in considerable pain and probably did not realize what he was saying. Later his statement was that he attempted to pass the preceding station wagon at the rate of 35 miles an hour, and as he came up with it, the station wagon forced him out of the second line of traffic into the third, giving him no time to avoid the collision. Lawrence, in his evidence, says that he was two-thirds of the way past the station wagon when his wife screamed. He turned his head to see what was the matter and saw the station wagon was forcing him out of the second lane of traffic into the third. He looked up and saw the approaching beach wagons, the first of which was within a few feet of him. He did not have time to do anything but grab the steering wheel and hold tightly to it; and on cross-examination he said that he did not see the approaching beach wagons until they were within a few feet of him. From this it appears that he was paying no attention to traffic conditions until his wife screamed. He grabbed the steering wheel and his car shot across the road into the approaching beach wagon, all in a split second.

We cannot know what the wife did or saw. The evidence sustains the judgment.

The defendant filed a plea of *autrefois convict*, in which he alleged that he had theretofore been convicted on this charge—"That the said Johnny Lawrence on the 26th day of April, 1942, in the county of Sussex, did feloniously and unlawfully kill and slay one Ralph Yonkers against the peace and dignity of the Commonwealth of Virginia,"—and that

Yonkers and Montgomery had been killed in the same accident.

The defendant contends that he is protected by that provision in section 8 of our Constitution which declares that one shall not "be put twice in jeopardy for the same offense." It will be noted that the test here is the identity of the offense.

Courts are in hopeless conflict when it comes to the solution of the problem of the identity of offenses. *State* v. *Fredlund*, 200 Minn. 44, 273 N. W. 353, 113 A. L. R. 220. And cases dealing with that subject are almost unnumbered.

Judge Freeman in a note to *Roberts* v. *State*, 14 Ga. 8, 58 Am. Dec. 528, said:

"So where the defendant, by his act, injures in fact two or more persons, though it be accomplished in the same transaction, yet as many distinct offenses are committed. The facts of one are materially variant from those of the other. Such is the case where two or more persons are shot at the same time," citing among other cases *Vaughan* v. *Commonwealth*, 2 Va. Cases (4 Va.) 273. He cites also *People* v. *Warren*, 1 Park. Cr. 338, in support of the proposition that "An intent to kill two persons by the same act constitutes two distinct offenses."

This subject, by the same author, is elaborately considered in a note in *People* v. *McDaniels*, 137 Cal. 192, 69 P. 1006, 92 Am. St. Rep. 81, 120.

In Wharton's Criminal Law, Vol. 1 (12th Ed.) p. 537, it is said:

"Same act may constitute two or more offenses which are distinct from each other. In such cases the accused may be separately prosecuted and punished for each, and a conviction or acquittal in a prosecution for the one will not constitute a bar to a trial for the other. Thus, where two or more are assaulted, robbed, or their goods stolen, or are shot or murdered by one and the same act and at the same time, conviction or acquittal on an indictment for offense

against the one will be no bar to a trial on an indictment charging the offense against the other. * * * "

Van Fleet on Former Adjudication, Vol. 3, section 622, points out that in many States, if a number of persons are injured by the same act, there is but one offense, but he also points out that this rule has not been followed in California, Kentucky, New York, South Carolina and Virginia, and to this effect is *State* v. *Corbitt,* 117 S. C. 356, 109 S. E. 133, 20 A. L. R. 328.

In 16 C. J. sec. 453, it is said:

■ "On the other hand there are many adjudications to the effect that, if two or more offenses grow out of the same transaction, such offenses are severable and distinct, a prosecution for one will not bar a prosecution for the others," citing among other cases *Vaughan* v. *Commonwealth, supra.*

A late and well considered case dealing with this subject is *State* v. *Fredlund,* 200 Minn. 44, 273 N. W. 353, 113 A. L. R. 215. In it is this statement:

■ "In *People* v. *Brannon,* 70 Cal. App. 225, 233 P. 88, the court again carefully reviewed cases from other jurisdictions as well as its own. The first and second syllabus paragraphs, well sustained by the opinion, read: 'It is the identity of the offense, and not of the act, which is referred to in the constitutional guarantee against putting a person twice in jeopardy. Where two or more persons are injured in their persons, though it be by a single act, yet, since the consequences affect, separately, each person injured, there is a corresponding number of distinct offenses.' "

In *People* v. *Allen,* 368 Ill. 368, 14 N. E. (2d) 397, certiorari denied by the Supreme Court, this principle is reaffirmed. The dissenting opinion of Justice Shaw brings out the issue in sharp relief:

■ "Under this rule, if a grossly negligent act should result in a large number of deaths, the defendant might be tried as many different times as there were deaths involved. Even though jury after jury might find that he had not been grossly negligent, he could be compelled to return

again and again to stand trial on this one point, which is the gist of the case."

By the same token one might recklessly drive his automobile into a crowd, killing many people. If the Commonwealth should perchance fail in its first indictment, the accused would go free.

Other authorities to the same effect might be cited, but these serve to show that the Virginia rule is well supported.

Plainly if one were to poison a well from which several deaths followed, an acquittal in one case should not relieve him from liability as to others.

Our leading case with subject is *Vaughan* v. *Commonwealth*, 2 Va. Cases (4 Va.) 273. It there appears that Vaughan shot at Jennie Walker and in the same discharge shot both her and her child, Sally Walker. Vaughan was tried and acquitted of shooting Sally Walker and was then indicted for shooting Jennie Walker. Her plea of *autrefois convict* was rejected.

This subject is discussed in a note to *Page* v. *Commonwealth*, 26 Gratt. (67 Va.) 943, Michie's Reprint.

*Vaughan's case* was relied upon and followed in *Seymour* v. *Commonwealth*, 133 Va. 775, 112 S. E. 806. In that case, in pursuance to a conspiracy theretofore formed, a party of pirates boarded a Japanese vessel in Norfolk harbor their purpose being to rob it of whiskey aboard ship. In an affray which followed two Japanese, Shagii Miyau and Hadie Sasaki, members of the ship's crew, were killed.

Before this second trial, Seymour and others had been tried for the murder of Miyau and were acquitted. Then followed this trial for the murder of Sasaki. A plea of estoppel was interposed, which for all practical purposes was a plea of *autrefois convict*. It was rejected. Judge Prentis, in the course of his opinion, said:

"There is an illuminating note upon the precise question as applicable to cases where there is a conspiracy shown, in *Patterson* v. *State*, 96 Ohio St. 90, 117 N. E. 169, L. R. A. 1918A, 588. It is there said that 'one charged with a substantive offense committed in pursuance of a conspiracy,

cannot plead former jeopardy based upon a previous conviction or acquittal of another similar but distinct offense committed in pursuance of the same conspiracy,' citing *Wallace* v. *State* (1899), 41 Fla. 547, 26 So. 713; *State* v. *Barnes* (1910), 26 S. D. 268, 128 N. W. 170; *Augustine* v. *State* (1899), 41 Tex. Cr. Rep. 59, 52 S. W. 77, 96 Am. St. Rep. 765. The recent case of *State* v. *Corbett* (S. C.), 109 S. E. 133, cites many additional authorities, though there the question was raised by plea of former acquittal."

Mr. Justice Gregory had occasion to consider this same subject in the late case of *Henson* v. *Commonwealth*, 165 Va. 829, 183 S. E. 438, saying:

"In *Seymour* v. *Commonwealth*, 133 Va. 775, 112 S. E. 806, Prentis, P., collected a great many cases bearing on this subject and held that the plea of *autrefois convict* or *acquit* was not applicable in the prosecution for the homicide of different persons in pursuance of the same conspiracy to commit the same robbery."

These cases leave us in no doubt as to Virginia law.

█ It is further said that even if the conclusions which we have reached are sound, they do not apply to automobile accidents. Certainly they do not apply to all automobile accidents. For example, those occasioned by darting children.

█ There is nothing peculiar about the law of automobiles. Here, as in all criminal cases, proof of negligence must be clear. The general rule was applied in these cases: *State* v. *Fredlund, supra; Fay* v. *State*, 62 Okla. Cr. 350, 71 P. (2d) 768; *People* v. *Allen*, 368 Ill. 368, 14 N. E. (2d) 397, and *Fleming* v. *Commonwealth*, 284 Ky. 209, 144 S. W. (2d) 220.

█ We have no intention of whittling away the responsibility of careless or reckless drivers. A list of our dead is eloquent in their denunciation as are the facts in this case.

█ The plea of *autrefois convict* was properly rejected. Here are two cases. In one of them the defendant is charged with the murder of Montgomery; in the other he

is charged with the murder of Yonkers. The evidence was the same in each, and the judgments in each must be affirmed.

*Affirmed.*