## UNITED STATES v. ST. CLAIR.
### Cr. No. 3244.

District Court, W. D. Virginia, at Roanoke.
Oct. 26, 1945.

T. Warren Messick, of Roanoke, Va., for petitioner.

Frank S. Tavenner, Jr., U. S. Atty., of Woodstock, Va., for the United States.

PAUL, District Judge.

Robert Clayton St. Clair, sometimes known as Dewey St. Clair, has filed his petition praying for a revision and reformation of a sentence or sentences of imprisonment imposed upon him at the January, 1938, term of this court at Roanoke.

The allegations of the petition are, in substance, that at the aforesaid term of court the petitioner was indicted for violation of the statute known as the White-Slave Traffic Act, § 2, 18 U.S.C.A. § 398, in an indictment containing twelve counts. That at the same term he entered a plea of guilty to each of the first ten counts and that upon this plea he was sentenced to imprisonment for a period of two and a half years on each of said ten counts with the provision that the ten respective sentences should be run and be served consecutively and not concurrently. That in pursuance of the sentence thus imposed the petitioner was thereafter committed to the United States penitentiary at Atlanta, Georgia, where he now remains in custody. The above recited allegations of the petition are supported by the records of this court and there is no question of their accuracy.

As a ground for reformation of the sentence imposed upon him the petitioner alleges that while the ten counts of the indictment to which he pleaded guilty purport to charge ten separate offenses for which consecutive sentences might be imposed, such counts in fact comprise and allege only five separate offenses for which consecutive sentences might be imposed. It is alleged that the second and third counts of the indictment relate to one and the same transaction and allege only one offense; that the same is true as to the fourth and fifth counts; the same as to the sixth and seventh counts; and as to the eighth, ninth and tenth counts.

These contentions arise from the following facts: The second count of the indict-

ment charges that the defendant (the petitioner here) on August 4, 1937, transported from Huntsville, Alabama, to Roanoke, Virginia, a woman by the name of Henrietta Sorey for purposes of prostitution etc. The third count of the indictment charges on the same date the transportation between the same points and for the same purposes of a woman named Ruby Reed. The petitioner now urges that these two counts of the indictment relate to only one offense "for the reason that the two separate and distinct women named therein were transported at the same time and in the same conveyance from Huntsville, Alabama, to Roanoke, Virginia."

Similarly, the fourth count charges the transportation on September 2, 1936, from Jacksonville, Florida, to Roanoke, Virginia, of a woman named Sophia Brosko; while the fifth count charges the transportation on the same date and between the same places of one Nell Wiggins. As to this also the petitioner alleges that both women were transported at the same time and in the same conveyance.

The same situation exists as to the sixth and seventh counts involving the transportation on July 1, 1937, between Frederick, Maryland, and Roanoke of two women who are separately named as the victims in the respective counts.

And again the eighth, ninth and tenth counts each charge a transportation between Greensboro, North Carolina, and Roanoke on July 28, 1937; each count naming a different woman as the subject of the transportation. As to these counts the petitioner raises the same question, namely, that there was only one transportation inasmuch as the three women were all carried on the same trip.

Briefly stated it is the contention of petitioner that where, in violation of the act, a defendant has transported several women in the same vehicle and on the same trip, there has been only a single transportation and therefore only one criminal act; and that the defendant cannot be charged with a number of separate offenses each applying to one of the several women involved.

After this lapse of time the court has a very indistinct recollection of the facts developed on the hearing of this case and no record of any evidence was taken at the time of hearing. However, the United States Attorney, supported by the case report in his files, agrees that the facts alleged by petitioner are correct; i. e., that in each case where the counts of the indictment allege transportation occurring on the same date and over the same course there was in fact a single trip; and that the separate counts are intended to relate to the different women transported on that trip. This statement comes as no surprise as I have no doubt that I was fully aware of it at the time the case was heard.

There being no dispute about the facts, there is presented to the court this one clear cut question: Where a violation of the White-Slave Act involves the transportation of more than one woman on the same trip and in the same vehicle, has there been committed only one criminal act, or does the transportation of each woman constitute a separate and distinct offense?

No question of the validity of the sentence in this case was raised at the time of its imposition although the petitioner was then represented by able and experienced counsel. I can only presume that his then counsel accepted the view that each of the counts stated a separate and distinct offense. That the petitioner has now, after the lapse of some years, raised this question is, I am sure, due to the comparatively recent decision in Robinson v. United States, 143 F.2d 276, decided July 17, 1944, by the Circuit Court of Appeals of the Tenth Circuit. However, in a case of this sort the lapse of time should not bar the petitioner from assertion of his rights if they have in fact been violated. Nor is he to be prejudiced by the fact that he pleaded guilty to each of the ten separate counts in the then belief that they each charged a separate and distinct offense.

On the direct question here presented there is a scarcity of authority in the decided cases. Indeed the only two cases which I am able to find dealing with the specific question are Robinson v. United States, supra, on which petitioner relies, and Gillenwaters v. Biddle, 18 F.2d 206, decided by the Circuit Court of Appeals of the Eighth Circuit in March, 1927. There is no doubt that the Robinson case is in direct support of petitioner's contention. But it is also true that the Gillenwaters case is as plainly to the contrary. So far as I can find the question has never been passed on in this (the Fourth) circuit nor by the Supreme Court. This court is thus faced with two conflicting views emanating from two courts of equal dignity and au-

thority. The decisions of a Circuit Court of Appeals are ordinarily persuasive, though not binding authority outside the circuit where rendered; and where, as here, these opinions are in conflict it would seem that this court is not only permitted but required to give the question its independent consideration.

It is to be borne in mind that this is not one of that line of cases where it has been held that in a transportation involving one woman only, the defendant may be charged with separate offenses under separate sections of the act; as for example, in Roark v. United States, 8 Cir., 17 F.2d 570, 51 A.L.R. 870, where it was held that a defendant might be convicted of two separate offenses, one under Section 2, 18 U.S.C.A. § 398, for "transporting" for immoral purposes, and one under Section 3, 18 U.S.C.A. § 399, for "inducing" the transportation, although there was but one transaction. In the instant case all of the counts are laid under Section 2, charging that the defendant "did transport" and "cause to be transported" and did "aid and assist in transporting," etc.; and in each count a different woman is named as the subject of the transportation.

Section 2 of the statute, so far as pertinent here, provides that:

"Any person who shall knowingly transport or cause to be transported, or aid or assist * * * in transporting, in interstate * * * commerce, * * * any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose * * * shall be deemed guilty of a felony, * * *" etc.

The argument of the petitioner is that the transportation in interstate commerce is the gist of the offense and that a single transportation can constitute only one crime, regardless of the number of women transported; and this appears to be the reasoning of the decision in the Robinson case. It is true that the interstate transportation is the act which constitutes an offense against the federal government. It is the element which, under our dual system of government, enables the federal government to take cognizance of a condition which must otherwise be left to the jurisdiction of the states and which, in the absence of such transportation, constitutes no crime against the federal law. But that the transportation is "the gist of the offense", as stated in the Robinson case [143 F.2d 278], is true only in a limited sense.

The transportation must be accompanied by the vicious purpose specifically set forth in the statute. The evil aimed at by this statute is prostitution or debauchery, and not the running of an automobile across a state line. Women are transported in interstate commerce by thousands each day in the course of normal travel. It is only when the transportation is for the purpose prohibited by the act that it constitutes a crime. The purpose or intent with which the transportation is effected is equally as essential as the transportation itself. As said in Hansen v. Haff, 291 U.S. 559, 563, 54 S.Ct. 494, 495, 78 L.Ed. 968:

"The Mann Act creates the offense of transporting in interstate commerce a woman or girl 'for the purpose of prostitution or debauchery, or for any other immoral purpose.' * * * This court has said that the act 'seeks to reach and punish the movement in interstate commerce of women and girls with a view to the accomplishment of the unlawful purpose prohibited.' Caminetti v. United States, 242 U.S. 470, 491, 37 S.Ct. 192, 197, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168. Accordingly, it has been held that the transportation denounced must have for its object or be a means of effecting or facilitating the sexual intercourse of the participants."

So many cases have turned solely upon this question of intent or purpose that citation of them seems needless.

■ If, as must be conceded, the evil against which the statute is directed is prostitution or debauchery, and if, as is undoubtedly true, the offense may be committed with a single woman, it would seem logical that a separate offense is committed as to each woman who is made the victim of such transportation. And this seems to be the import of the statute which forbids the transportation of *any* woman or girl. The word "any" implies singularity in number or selectivity among a number. See Webster's International Dictionary where it is defined as meaning "one indifferently out of a number" or as "one, no matter what one." And see United States v. Morse, 27 Fed. Cas. page 1, 2, No. 15,820.

In Ebeling v. Morgan, 237 U.S. 625, 629, 35 S.Ct. 710, 711, 59 L.Ed. 1151, a defendant was charged in seven separate counts with having, in the same transaction, cut open or mutilated an equal number of mail bags, in violation of a statute

making it a criminal offense to "tear, cut, or otherwise injure any mail bag * * * with intent to rob, * * *" etc. 18 U.S.C.A. § 312. As against the contention that there had been but a single offense, the Supreme Court says:

"Reading the statute with a view to ascertaining its meaning, it is apparent that it undertakes to make an offender of anyone who shall cut * * * any mail bag * * * with the felonious intent denounced by the statute. These words plainly indicate that it was the intention of the lawmakers to protect *each and every* mail bag from felonious injury and mutilation. * * * The offense as to each separate bag was complete when that bag was cut, irrespective of any attack upon, or mutilation of, any other bag." (Emphasis supplied)

With equal force it may be said that the statute now considered intends to protect "each and every woman" from the unlawful transportation and that the offense as to each separate woman is complete as to her when her transportation takes place, irrespective of the fact that it may have been accompanied by, or simultaneous with, similar offenses against other women.

If the contention of the petitioner be sound then a commercial purveyor of vice might recruit a number of women from various points within one state intended for distribution to various houses of prostitution in another state and limit himself to the commission of one offense if he took the precaution of seeing to it that they all crossed the state line on the same train. Surely Congress intended no such result as this when it based the crime upon the transportation of *any* woman or girl.

There is a close analogy between the White-Slave Traffic Act and the National Motor Vehicle Theft Act, 18 U.S.C.A. § 408. Both of these have invoked the control of the federal government over interstate commerce to deal with delinquencies over which the federal government would have no authority except through the power to regulate interstate commerce. Under both statutes a movement in interstate commerce is essential to the crime, but it is equally essential that the interstate transportation should be the consummation, accompaniment or attending circumstances of an act unlawful in itself and as to which the offender has a guilty intent or knowledge when bringing about the interstate movement. Of like nature is the Kidnaping Act, § 1, 18 U.S.C.A. § 408a. A similarity of language appears in these various statutes. Just as the White-Slave Act prohibits the transportation in interstate commerce of *any* woman or girl, the Kidnaping Act prohibits the like transportation of *any* person who shall have been kidnaped, and the Motor Vehicle Theft Act prohibits transportation of *a* motor vehicle. We may suppose a case where several motor vehicles were stolen from different owners in different localities within a state and thereafter transported in interstate commerce in a single movement by towing one behind another or by loading some stolen coupes in a van (also stolen). Or a case in which several persons kidnaped at different places were transported across a state line in the same car. Neither of these is an unlikely situation and while I find no case in which the question has been raised, I doubt that any court would give serious entertainment to the argument that only a single offense had been committed.

Language peculiarly applicable to such situations and to the instant case is found in State v. Robinson, 12 Wash. 491, 41 P. 884, 885, where it is said: "If a person without justification intends to kill A., and does so, he will be guilty of a crime; if he intends to kill B., he will be guilty of another and a different crime; and the fact that he entertains the intent to kill both, and carries such intent into effect *at the same time and place,* should not be held to make of that which would otherwise be a foundation for two distinct prosecutions a foundation for only one." (Emphasis supplied)

It is well settled that distinct violations of the law growing out of the same transaction may be charged as separate and distinct offenses. Albrecht v. United States, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505; Berry v. United States, 8 Cir., 18 F. 2d 276; Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306; Gavieres v. United States, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489; Rosser v. United States, 4 Cir., 75 F.2d 498, 499; Burton v. United States, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057, 6 Ann.Cas. 362.

In considering whether a single transaction may constitute more than one distinct offense the rule now generally accepted is stated in Morgan v. Devine, 237 U.S. 632, 641, 35 S.Ct. 712, 715, 59 L.Ed. 1153, as follows:

"The test of identity of offenses is whether the same evidence is required to sustain them."

In 15 Am.Jur. 56, it is said: "Offenses are not the same if upon the trial of one proof of an additional fact is required, which is not necessary to be proved on the trial of the other."

In State v. Van Buren, 86 S.C. 297, 68 S.E. 568, 569, the test is thus stated: "Would the evidence necessary to support the second indictment have been sufficient to procure a legal conviction upon the first."

In Morey v. Com., 108 Mass. 433, it is said: "A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other."

Couched in differing phraseology but to the same effect this rule has been restated in numerous cases. Blair v. State, 81 Ga. 629, 7 S.E. 855; United States v. Sacein Rouhara Farhat, D.C., 269 F. 33, 38; Bens v. United States, 2 Cir., 266 F. 152, 160. When we come to apply this test to the counts of the indictment in the instant case, it seems apparent that they each charge a separate crime. As pointed out heretofore offenses against this statute involve not only an interstate transportation but require as an equally essential element that the transportation be with the unlawful purpose or intent condemned by the statute. Proof of this unlawful purpose must be made in every case in order to prove the crime. And proof of a defendant's intention as to one woman is no proof of his intention as to another. It might well be that a person transporting several women in an automobile in an interstate movement might have as to one or more of them the unlawful purpose set out in the statute, but have no such intention as to the others. If, for example, this case had been tried on the merits, the government would have been under the necessity of proving the petitioner's unlawful purpose as related to each of the women involved. Proof of such purpose as to Henrietta Sorey (2d count) would not constitute proof of his intention as to Sophia Brosko (3d count) who was in the automobile on the same trip. Or if the defendant had pleaded guilty to the 2d count, thereby admitting his unlawful purpose as to Henrietta Sorey and had pleaded not guilty to the 3d count, the government, in order to convict upon the 3d count, would have been compelled to submit proof of his intention as to Sophia Brosko. Neither the admissions of the defendant nor proof by the government as to defendant's intentions as to one of the women would suffice as proof of his intentions as to the other. Different and independent evidence would have been required to prove the intent in each case. It might be added that it would also have been necessary to prove the transportation in each case.

Until the decision in the Robinson case, upon which petitioner relies, there does not seem to have existed much doubt on the question now raised. Courts as well as defendants and attorneys appear to have generally concurred in the view that a defendant was properly chargeable with more than one offense when he transported more than one woman with an unlawful purpose applicable to each. The Gillenwaters case would seem to have expressed a view with which there was general acquiescence. In so saying I have not overlooked the case of United States v. Westman, D.C. Or., 182 F. 1017, which may be construed to imply support for petitioner's contentions. But in that case the specific question was not dealt with and the action of the court was upon a demurrer to an indictment which the court held was not bad for duplicity. It is true that the court there refers to the transportation of the two women as a "single act" but it does not appear that it held then or thereafter that there had been committed but a single *offense*. And the conclusion that the indictment was good might well have rested on the provisions of Section 557, Title 18 U.S.C.A., R.S., § 1024, which permits the inclusion in one indictment of separate charges arising from "the same act."

In the case of Freed v. United States, 49 App.D.C. 392, 266 F. 1012, under circumstances identical with the instant case, the defendant's contention was substantially the contrary to that of the petitioner here. In that case two women were transported in one automobile trip and the indictment contained separate counts relating to each. The defendant, not denying that there were two offenses, contended that they could not be joined in one indictment. The court held that while there were two separate offenses, nevertheless they grew out of the "same transaction"

and could therefore properly be charged in separate counts in one indictment under the provisions of Section 1024, R.S., 18 U. S.C.A. § 557. Both the defendant and the court agreed that two offenses had been committed.

The case of United States v. Waldon, 7 Cir., 114 F.2d 982, although arising under a different statute, reflects this same acquiescence in the theory that one act affecting two persons may constitute two separate offenses. That case was for violation of the statute, 18 U.S.C.A. § 320, making it unlawful to assault any person having custody of the mails with intent to rob etc. The defendant, attempting to rob a mail car, was charged, convicted and sentenced on two separate counts involving two separate custodians of the mail (presumably railway mail clerks). The appeal in the case rested on an entirely different matter and no question was raised as to the propriety of the two separate charges.

The fact that the Robinson case appears to be contrary to a view theretofore generally accepted does not, of course, determine that it should be rejected. On the contrary, being the latest case on the subject, it is required that it be carefully considered. But when this is done I find myself unable to accept its conclusions. In addition to what has already been said, I would make particular reference to my inability to accept as correct the statement in that case, 143 F.2d 278, that the weight of authority is to the effect that where the same act results in the death of two persons, a conviction for the murder of one bars a prosecution for the killing of the other; that the killing of both constitutes but one crime. Frankly, I am of the impression that, while there is some conflict, the law is generally to the contrary. And in one of the carefully prepared annotations characteristic of that publication I find that it is so stated in 20 A.L.R. 341, where it is said: "The general rule is that the conviction or acquittal of one charged with the murder of, or assault upon, one person, is not a bar to his subsequent prosecution for the murder of, or assault upon, another person at the same time." (Emphasis supplied)

A review of the cases dealing with this subject shows that many of them involved situations where in the course of an affray the defendant had delivered several blows or shots in quick succession as a result of which more than one person was killed or injured. In such cases there would seem little room for doubt that more than one crime had been committed upon the theory that separate shots or blows, and therefore separate "acts," were responsible for the separate injuries. A carefully considered case typical of this situation is State v. Corbitt, 117 S.C. 356, 109 S.E. 133, 20 A.L.R. 328. But it would appear also that the weight of authority (though there is some to the contrary) supports the principle that even though there is but a single act separate offenses have been committed where such act has resulted in harm to more than one person.

This has been settled in this state (Virginia) since the case of Vaughan v. Com. (decided in 1821) 2 Va.Cases 273, where two persons were shot by the same discharge of a shotgun and it was held that two offenses had been committed.

In Keeton v. Com., 92 Ky. 522, 18 S.W. 359, it was held that in a holdup of two persons where a pistol was pointed at them at the same time, with a demand for their money, the act constituted a separate assault upon each and a separate robbery of each.

In State v. Sonnerkalb, 2 Nott. & McC. 280, the court said:

"But let it be admitted, that the defendant committed, physically, but one act; two offenses may be committed by one act, even at the common law; a person fires a gun, kills one, and wounds another, if he escapes for the homicide (that is, if his life be not taken), he may be indicted for the assault on the other; or suppose he severely wound two, he may be indicted for two assaults."

In State v. Thurston, 2 McMul. 382, the defendant was charged with stealing at the same time cotton belonging to three individuals. The court held that he was properly indicted in three cases, and a conviction in one case was no bar to a conviction in the other two.

The rather recent case of Lawrence v. Com., 181 Va. 582, 26 S.E.2d 54 (decided 1943), was one where the driver of an automobile had negligently driven it into another, thereby killing two persons; and resulting in two separate indictments for the separate homicides. On a trial of the second indictment a plea of former jeopardy was filed. The court, following a careful discussion of the authorities, held that two separate offenses had been committed

and that the plea was properly rejected. Citing and quoting from People v. Brannon, 70 Cal.App. 225, 233 P. 88, the court says [181 Va. 582, 26 S.E.2d 56]:

"It is the identity of the offense, and not of the act, which is referred to in the constitutional guarantee against putting a person twice in jeopardy. Where two or more persons are injured in their persons, though it be by a single act, yet, since the consequences affect, separately, each person injured, there is a corresponding number of distinct offenses."

The court uses, among others, the following example: "Plainly if one were to poison a well from which several deaths followed, an acquittal in one case should not ·relieve him * * * as to others."

Com. v. Browning, 146 Ky. 770, 143 S.W. 407, 408, was a case in which the defendant had wounded two men with one pistol shot and where it was held that two separate assaults had thereby been committed. The court, in emphasizing that the offenses were distinct and that different evidence was necessary to sustain them, says:

"Manifestly, appellee, if first tried for the shooting and wounding of Caywood, could not be convicted on proof that he shot Stewart, though both Caywood and Stewart were wounded by one and the same shot. As well might it be argued that, in the killing of several of the same family by putting poison in the food eaten by them, conviction of the poisoner for the death of one of them would bar a prosecution for the killing of the others."

In the case of People v. Alibez, 49 Cal. 452, there was actually in issue the situation used as an illustration in the two cases last above cited, namely, of multiple deaths caused by one administration of poison. The defendant had administered strychnine to three persons at one and the same time. He was indicted for the death of all of the victims and judgment was arrested on the ground that he had been charged with three separate offenses in one indictment.

And in People v. Majors, 65 Cal. 138, 3 P. 597, 603, 52 Am.Rep. 295, citing People v. Alibez, supra, it is held (quoting from the syllabus): "Where two are murdered by the same act, conviction or acquittal as to one does not bar a prosecution to the other." The court says (from the opinion): "On the trial of the defendant, Majors, for the murder of Renowden he could not have been convicted of the murder of McIntyre. The two crimes, although committed at one time and by the same act, are entirely different in their elements, and the evidence required to convict in the one case very different from that essential to a conviction in the other."

People v. Allen, 368 Ill. 368, 14 N.E.2d 397, 403, is another case involving the death of two persons struck simultaneously by a speeding automobile. Two indictments for manslaughter being returned, the defendant, on the trial of the second, raised the question of former jeopardy. The court after pointing out that "there was but a single physical act—the collision—from which two persons met their deaths," nevertheless held that two separate offenses had been committed. In a carefully considered opinion reviewing the authorities the court emphasizes that:

"A distinction obtains between an offense and the unlawful act out of which it arises. The·act is the cause of the offense which, conversely, is the result of the act. The constitutional inhibition is directed to the identity of the offense and not to the act. * * * two or more distinct offenses may grow out of the same transaction or act, and the rule (relating to former jeopardy) * * * has no application where two separate and distinct crimes are committed by one and the same act."

The court then poses the question (which it answers in the negative):

"Could a jury in the former case, which charged the manslaughter of Ray Duran, have returned a verdict for the manslaughter of Charles Klafter? In indictments for offenses against persons * * * the name of the person injured .must be stated if known.

*      *      *      *      *

"An accused cannot be tried for the manslaughter of any other person than the one charged by the indictment upon which he is then being tried. The substance of one crime cannot be proved by proving the substance of another."

State v. Fredlund, 200 Minn. 44, 273 N.W. 353, 113 A.L.R. 215, is another case of two deaths in an automobile collision resulting in two indictments against the. defendant. Here again it was held that two offenses had been committed. Here also the court points out the test that the offense, not the act, must be identical to sus-

tain a plea of former jeopardy and that the evidence could not be the same in each case.

A case involving the principle involved is Smith v. Com., 7 Gratt. 593, 49 Va. 593 (decided in 1850), involving a statute making it unlawful to advise any slave to abscond. It was held that a conviction for advising one slave to abscond was not a bar to prosecution for advising another to abscond, although the advising was to both at one time, and by the same words and acts.

It is to be noted that many of the cases dealing with this question of identity of offenses lay emphasis on the distinction between a single *act* and a single *offense,* holding that a single act may constitute more than one offense and that it is only when the offense is identical that the law forbids putting a defendant twice in jeopardy. And further that the test of identity of offenses is whether the same identical evidence which suffices to prove one of the offenses serves to prove the other; whether the offenses are identical in law and in fact. See Lawrence v. Com; Com. v. Browning; People v. Majors; People v. Allen; State v. Fredlund; all of which have been cited hereinbefore.

To the same effect is Winn v. State, 82 Wis. 571, 52 N.W. 775, 777, where it is said:

"The rule is that the offenses charged in two indictments are not identical unless they concur both in law and in fact. * * * the true inquiry is whether the first indictment was such that the accused might have been convicted under it by proof of the facts alleged in the other indictment."

In a note to Roberts v. State in, 14 Ga. 8, 58 Am.Dec. 528, 540, Judge Freeman in a lengthy discussion of the identity of offenses says:

"When the same act constitutes two or more distinct offenses, each is separately indictable. The defendant may be separately punished for each offense * * *."

And after pointing out that the proof of the allegations of one indictment are insufficient to secure a legal conviction under the allegations of the other, he continues:

"A well settled example of this—of two offenses distinct from each other, arising from the same act—occurs when the criminal act *affects two different persons."* (Emphasis supplied)

And see Burton v. United States, 202 U. S. 344, 381, 26 S.Ct. 688, 699, 50 L.Ed. 1057, 6 Ann.Cas. 362, where it is said: "It is well settled that 'the jeopardy is not the same when the two indictments are so diverse as to preclude the same evidence from sustaining both.'" Bens v. United States, 2 Cir., 266 F. 152, 160.

And in Wharton's Criminal Law, Vol. 1, 12th Ed., p. 537, the statement is made:

"The same act may constitute two or more offenses which are distinct from each other. In such cases the accused may be separately prosecuted and punished for each. * * *. Thus, where two or more are assaulted, robbed, or their goods stolen, or are shot or murdered by one and the same act and at the same time, conviction or acquittal on an indictment for the offense against the one will be no bar to a trial on an indictment charging the offense against the other."

There will be found numerous other cases in agreement with the foregoing citations and referred to therein, but which need not here be listed. Applying these principles, which appear to me to be eminently sound, to the instant case it appears clear to me that each of the counts in the indictment set forth a separate offense. In none of the counts would proof of the allegations therein have been sufficient to prove the offense charged in any other count. While the act of transportation was a single one, it was necessary in order to convict on any count, to prove the transportation of the particular woman named in that count and further that the unlawful intent existed as to that particular woman at the time of the transportation. In each case the proof, or failure to prove, these necessary facts was not dependent upon proof of similar facts involving any of the other women. I am of opinion, therefore, that the sentence imposed in this case was proper and that the petition for its reformation should be denied.

I might add to what has been said the earnest hope that an appeal will be taken from the action of this court in this case, in order that this question may be settled in this circuit. It is in fact desirable that this case, or a similar one, be taken to the Supreme Court so that there may be a decision binding in every circuit throughout the country. Violations of the White-Slave Act wherein several women are transported at one time are, unfortunately, not uncommon. And the extent of the of-

fender's crime in such cases should be determined by a rule of universal application and not depend upon the geographical location wherein he is brought to trial.